Good morning. May it please the Court, Jennifer Kuhn on behalf of Samuel Radobenko. I'd like to reserve two minutes for rebuttal and I'll keep track of my own time. This case should be remanded to correct two procedural errors in calculating the sentencing guidelines. First, there was procedural error in imposing a 16-level loss enhancement under the wrong burden of proof and without adequate factual basis to support the… Was it a burden of proof or standard of proof? Excuse me, a standard of proof. Yeah, that's what I thought. Okay, I just wanted to make sure I'm with you. Yes. I mean, don't we have just clear case law about this? Whatever you might think of the case law, isn't there a clear case law about the question of the amount of loss? Well, the government has argued that the heightened standard, clear and convincing, doesn't apply when we're talking about the extent of a fraud conspiracy that's been… Right. …for which the defendant has been charged and convicted. Right. However, under the Treadwell case, which the government cited, the court noted that the heightened standard may still apply when due process concerns are in play. And there's a number of factors that the court looks at in determining that. But I think here what we have… I think here that's definitely the case because it's not an accounting calculation that we're looking at the amount of actual loss. It's a more fundamental question of whether any loss was intended at all. Mr. Radobenko was charged and convicted of a fraud conspiracy, but he never admitted or was convicted of intending any amount of loss. And he maintains that he didn't intend any loss. Then why did he – didn't he plead guilty? He pled guilty to a fraud conspiracy, and he certainly is guilty of… How could he have pleaded guilty without intent to defraud? He did attempt – he did attempt to defraud these undercover agents with respect to this trading program. But his position is that he always intended to do trading and not to lose that money if he ever had access to it. Then he's innocent if he never intended to steal their money. He committed misrepresentations. He's admitted that. There was no such trading program as was represented by Mr. Radobenko and the co-defendants. But he never admitted intending any loss. What would he do with the money once he got hold of the $1.5 million? Well, his position is that he would have tried to trade it. There's just no record evidence as to any intent to lose that money to cause any loss at all. I think that a judge could look at the record as it – information as it existed and say, well, obviously he intended – whatever amount he intended, he certainly intended to take somebody's money and not pay it back because otherwise the whole thing makes no sense. Well, I just think that there are due process concerns in play here because there is the fundamental question of whether there was any intent and also because the amount – I'm sorry, but I think you're really challenging the plea because if he didn't intend for pecuniary gain of some amount, then why does he plead guilty to having committed a fraud? I mean, it just – I don't see the connection. It seems inconsistent to me. He's not challenging the misrepresentations that he made that are laid out in detail. But a fraud isn't only misrepresentation. It includes reliance on loss, no? Or a misintent of loss. He certainly intended to gain access to this money under fraudulent pretenses, and I think that's the basis for his plea that's laid out in detail in the plea agreement. Why should the district judge give him a further break and say, well, I don't really know what you would have done with it, but I'll give you the benefit of what's not here in the record? I mean, he did talk about getting $1.5 million, right? He did try to get access to that money, which was – Isn't it more likely than not that he wanted to use that for his own benefit? That's why he got it, wanted it. He didn't get it. I'll submit on this issue with the last thought that he did intend to trade that money and that the court – there are no findings below to support an intent to cause any loss. Moving on, there was also error in using the $1.5 million that the government chose to put in the investment account. And as I conceded in my opening brief, there is case law, the Robinson case, as well as guideline commentary that supports using intended loss, even in a government sting operation such as this. But there is also the principles that a loss calculation should be realistic and fact-intensive. And in this case, the amount of money was controlled by the government. It was the amount that they chose to put into the account. And there was no possibility that the offense could succeed. That's essentially a sentencing entrapment claim, which you didn't make as such. No, I'm not making a sentencing entrapment claim. But there was no possibility that Mr. Rabado-Banco ever could have had access to that money. And so I do think that the amount of loss was overstated. Well, how could it be more – I'm sorry. Go ahead, Judge. I was just going to ask you to go on to the last issue, which I think is – The roll issue? I'm sorry? The roll issue, you mean? Yes. Thank you. Regarding roll, there is no dispute regarding the legal standard that applies. It's clear that it's not enough to show that Mr. Rabado-Banco was more culpable than the other co-conspirators and that there must be sufficient evidence that he exercised control over others involved in the offense or that he was responsible for organizing other participants. But here, the government has pointed to no evidence that would meet that standard. The evidence that the government identifies in its brief all relates to misrepresentations made by the co-defendants during the course of conspiracy regarding Mr. Rabado-Banco's purported role and responsibilities with respect to this nonexistent trading scheme. Can I ask you just one question? Yes. From the wiretaps we have, couldn't the district court have inferred at least that five people were involved? Yes, I'm not disputing the number of people involved. Okay. So then, once you have five people involved, isn't it enough for the defendant merely to have supervised one of those people in order to get this enhancement? It's correct under the Riley case that he only needed to exercise control or have responsibility for organizing one other person. Okay. I'm sorry. So I thought for sure there was at least one person, even from the wiretaps, we could infer that he was sort of in charge of it. Are you disputing that? Yes, I am, because the wiretaps really evidence play-acting on both sides. What we have here is two sides playing roles. There's a nonexistent trading scheme with various defendants making claims about their respective roles and responsibilities, just as we have the undercover agents pretending to be a wealthy investor and a principal of a financial advisory firm. And just as we can't tell from the agents' representations on the calls what their actual chain of command is, we can't tell from the wiretaps what the actual chain of command was among the co-defendants. Just as if it's possible Mr. Radomenko could have been an out-of-work actor, paid $50 to pretend to be the top dog in a nonexistent trading scheme, the fact that he's representing himself as such on the wiretaps doesn't indicate that that was his actual role in the scheme. But aren't we just trying to measure the – we're trying to assess this individual defendant's culpability, and I don't understand why, even if he's play-acting, within the scope of that nonexistent scheme, why isn't it enough that he's pretending to be the top dog? It suggests that he's a more culpable participant than others, no? Well, first of all, because it's not sufficient just that he's more culpable. He actually has to exercise control over others or be responsible for organizing others, and the guidelines commentary indicates in the related context of distinguishing a managerial role versus a supervisory role that titles are not determinative. Certainly that's the case here where he represented himself as the top dog and the point of contact to a licensed Fed trader for this nonexistent trading scheme when none of that was the case. It's as likely that he was lying about that as he was about everything else, and we shouldn't hold it against him. Is that essentially what you're saying? What I'm saying is we don't have actual evidence as to his actual role in the scheme, and we don't have findings. That's my whole point. I mean, the only source we apparently have is statements that he made, correct? Correct, that are specifically identified by the government in his plea as being false. And they're clearly self-inculpatory as to this issue, that I was the top dog and so forth and so on, but it seems to me what you're saying, and I'm not sure it doesn't make sense, is, he was lying about everything else. How can we give him any credence on this small segment of the overall lies that he was telling? And is it accurate or not? Well, yes, it is, specifically when the misrepresentations that he made have been identified and admitted to be false in his plea agreement. So what we don't have is actual evidence as to his actual role or responsibility. But it's slightly more subtle than that, what you're saying, I think. It's that we actually don't have, even from him, any evidence of his actual role in the actual conspiracy as opposed to in the overall false scheme that didn't exist at all. So it's not so much that he was lying about his role. He didn't say anything about his actual role and the relevant role. Correct. We don't have debriefs from the other defendants or evidence from the agents as to what they uncovered as to his actual role. One thing that the government relies on is that he signed the final contract. Yes, that's correct. That is, I think, the only piece of evidence that would go to his actual role in the scheme. However, it doesn't indicate how the proceeds would be divided up among the co-conspirators. So I don't think that's sufficient to carry the day. And I'll submit on that reserve in the remaining time. Thank you very much. Thank you. It would be most helpful to me if you started with the last question. Manager, Supervisor, yes, Your Honor. May it please the Court, my name is Ellen Meltzer. I represent the United States Department of Justice in this case. It's the government's position that there was no plain error in the district court's application of the three-level enhancement for managerial role in the case. Mr. Radivenko's own statements and those of his co-conspirators demonstrate that he was the manager or supervisor in this fraudulent scheme. The conversations that the undercover agents had with Mr. Radivenko  that he intended to keep the largest share of the monetary proceeds. Could you be really specific about what evidence you're relying on for those statements? Yes, Your Honor. According to all of the statements, he was the program manager. All of the other defendants refer to him as such. They all refer to him as what can basically be described as the trading wizard in this case. But this is all about the scheme that didn't exist. Excuse me? This is all with regard to the non-existent. The trading program actually did not exist. But he supposedly was going to set it up through his company, Southwest, which certainly did exist, which the PSR found did exist in that he was the president and the person who controlled it. He determined through the scheme what paperwork was required on pages 134 and 136 of the record. The other defendants talk about the paperwork that he required. He needed to approve that paperwork. He exercised control over the others during the course of the scheme. All of the other defendants, Mr. Petro, Mr. Balthazar, and Mr. Foti, all defer to him as to questions that were raised by the undercover agents. And they said at certain times that he would get angry if they actually answered certain questions, that he was the only one that could answer certain items. He's the one who drafted the contract, which was in the name of his own company, Southwest. He's the one who sent it to the FBI agents. And either of those things would suffice with regard to the fact that he had to supervise somebody, right? Yes. But in terms of supervising, Mr. Foti said that Mr. Ratabenko had appointed him to the position. And one doesn't necessarily ñ No, he didn't, because there was no position. But one ñ there was a position within the conspiracy. Right. But he didn't say he appointed him to a position within the conspiracy. He said he appointed him to a position within this nonexistent ñ But one doesn't necessarily have to supervise others. One can manage. Okay. And he seemed to manage. He signed the contract. He wrote the contract. The contract was in the name of his company. He alone tried to become a signatory to the account in which there was $1.5 million of Bank of America. And he was the final negotiator with the agents concerning that particular bank account. If the court would refer to pages 162, 163, 169, and 181 of the record, he was negotiating with them concerning getting access to that account. So are you basically saying, if I can paraphrase, that these facts, which seem to be the only ones that do go to his actual role as opposed to his purported role, while they do not themselves demonstrate that he's supervising anybody, will support the inference that he was? Because if he's the one who is dealing in that degree with the money, it's a fair inference that he's the main person in this scheme. I mean, is that what you're saying? Yes, Your Honor. And so, and since somebody must be telling other people what to do, it must be him because he seems to be the main person. He certainly did appear to be the main person in the scheme, both on paper by the documents that were given to the agents and the documents that the agents returned, and through the actual undercover tapes. If he had been successful, he would have been the one who had access to the $1.5 million. And it was Mr. Ratabenko who determined to end the communications with the agents when they pressed him to provide identification and to accompany them to execute the signature card for the Bank of America account. Any claim that the record is inadequate is because the defendant never objected. The defendant never objected to this enhancement when it was suggested through the PSR, when the government asked for this enhancement through a sentencing memo, and at the imposition of sentencing itself. If he had objected, the government could have supplemented the record with certain exhibits that were submitted in evidence during the Balthazar trial, which were not submitted in this case due to the fact that it was a plea. Would the court like me to address intended loss? There are a couple of points that I would like to make as to that issue. As to the defense claim that the government is the one who structured this loss, the defense is wrong. The defendants structured the intended loss at $500 million, and they structured the loss, and the government didn't structure it, by them setting the minimum amount to the investment, which changed over time from $100 million to $150 million, and then it became $500 million. And the court gave him a break, didn't he, because it looked to the $1.5 million? Correct, Your Honor. But they initially structured it. They did structure it at $500 million. But my point simply is he did get a break in that regard because the court did not pay attention to that sort of expansion. Right, due to a stipulation by the government that the $500 million overstated it. But they wrote the contract for that amount. They asked for proof of funds of that amount, and they tried to gain access to a bank account which they believed contained that amount of money. Unless the court has any other questions on loss, we'll submit on the briefs. Thank you. Thank you. We have about a minute left. You have about a minute left. Thank you. Just very briefly on the roll issue, the cites that the government made to the paperwork and to the deference to others, again, those are on the wiretaps. These are false representations regarding the details of the nonexistent scheme. It is true that Mr. Ratabenko got involved at the end of the scheme in the contractual negotiations. But also the whole thing was wrapped around an actual company that he actually did own. He did own that. We don't know the relationship of the other defendants to that entity because it's not on the record. We do know that the other participants recruited and groomed the agents over a period of months before Mr. Ratabenko got involved on the wiretaps. What about the point that counsel made, which candidly is quite persuasive for me as a district judge? There was no objection. I'm going to get reversed because on the basis that I committed a clear error by looking at the record that was in front of me, there was no objection. There was no timeout, Judge. Wait a minute. That's wrong. They were all minnows swimming in the sea the same size, same time together. I mean, candidly, that's troublesome to me. We are here under a plain error review because the trial counsel did not make an objection as to that issue. But I do think we still satisfy plain error because it is so egregious to rely primarily on the wiretaps and the misrepresentations as to roles in a non-existent case. Except that, you know, it's a good – if we were to reverse and remand, presumably they'd get another shot at doing this, right? Correct. And it's a pretty good guess they're going to come up with something. And the district judge, not hearing an objection, could easily have said to himself, you know, they're not objecting because they know if they do, the government's just going to put something else in. So what's the point? They've gotten worse. Go ahead. I'm sorry. I'm sorry. I don't think we can speculate on that. We don't have record evidence as to Mr. Radivanko's actual role or supervision of others. But it's not – I mean, one has strong – there's a strong likelihood that they didn't set up the phony organization with somebody in charge and having negotiation and access to the money and so on who was not the actual person in charge. It's not – it's possible, but it's not that likely. I would dispute that. Since the government didn't let this transaction play out and none of the money ever was transferred, I don't think they have any additional evidence as to the actual roles of the defendants. But we don't know because it was never called upon to produce it. And we wouldn't be here, I don't think, if whatever had happened happened. It got called upon. They had nothing. Then fine. I realize we're way past time, but is yours an all-or-nothing point that either there could have been no enhancement for any loss whatsoever or that $1.5 million is simply too high and there should have been something between that and zero? I think both positions. Because the trial court applied the wrong standard of proof and because we don't have evidence as to the amount or even the existence of intended loss, it should be remanded to develop the record on that issue. What if the government comes in and shows, wait a minute, truly it was $200 million that they've got other evidence that they didn't produce because of the plea. They were sitting around and they got wiretaps and so forth, talking on the phone. Could a loss calculation be ratcheted up? I think they would be in breach of the plea agreement. Okay, that's right. Yeah, you're right.  Okay, thank you very much. Thank you. Interesting argument. The case of United States v. Rapodenko is submitted.
judges: Carr, Berzon, Watford